**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **TINA K. WESTLAKE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 13-cv-152-GKF-TLW |
| ) | |
| **CAROLYN W. COLVIN,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Tina K. Westlake seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **REVERSED AND REMANDED**.

## INTRODUCTION

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to

determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 44-year old female, applied for applied for Title XVI benefits on November 17, 2009, with a protective filing date of October 29, 2009. (R. 111-15, 123-25). Plaintiff alleged a disability onset date of September 7, 2007. (R. 111). Plaintiff claimed that she was unable to work due to multiple physical and mental issues, but primarily back, neck, and knee injuries. (R. 127). Plaintiff's claim for benefits was denied initially on May 10, 2010, and on reconsideration on August 30, 2010. (R. 56-57, 58-61, 66-68). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on August 23, 2011. (R. 24-55, 69-70). The ALJ issued a decision on November 23, 2011, denying benefits and finding plaintiff not disabled because she was able to perform other work. (R. 11-23). The Appeals Council denied review, and plaintiff appealed. (R. 1-5).

**The ALJ's Decision**

The ALJ found that plaintiff had not performed any substantial gainful activity since her application date. (R. 16). The ALJ found that plaintiff had severe impairments of "fibromyalgia, degenerative disc disease, status post cervical spine fusion, history of left knee surgery, plantar fasciitis, obesity and generalized anxiety disorder." Id. After reviewing the "paragraph B" criteria, the ALJ determined that plaintiff had moderate limitations in the areas of activities of

daily living; social functioning; and concentration, persistence, and pace. (R. 17-18). Plaintiff's impairments, however, did not meet or medically equal a listing. (R. 16-17).

The ALJ then made findings based on the testimony and medical evidence. The ALJ reviewed plaintiff's testimony and a function report completed by plaintiff's boyfriend. (R. 19). The ALJ also reviewed the most recent medical evidence, beginning with a July 2009 doctor's visit. (R. 20). At that time, plaintiff underwent a physical examination, which was normal. Id. She was advised to contact Family and Children's Services for a mental health evaluation, but plaintiff did not follow that recommendation. Id. Plaintiff sought additional treatment in April 2010 after plaintiff experienced elevated blood pressure and chest wall pain. Id. Plaintiff's knee x-rays, dated July 2010, were normal. Id.

Plaintiff did seek mental health treatment, and she was assessed in June 2010. Id. At that time, she was experiencing "*some* ongoing mood swings, daily anxiety and *moderate* depression." Id. (emphasis in original). The ALJ found that plaintiff had not been compliant with her treatment, attending only four of seven therapy appointments. Id. The ALJ also cited plaintiff's report that her pain medications were "working well for her." Id. Plaintiff asked to be released from mental health treatment in November 2010 in order to attend a new pain management program. Id. Plaintiff told the mental health facility that she could not participate in the pain management program while she was receiving mental health treatment. Id. Plaintiff indicated at that time that her mental health symptoms were minimal and well-managed. Id.

The ALJ also evaluated the medical opinion of the agency physician. (R. 21). The ALJ rejected the findings that plaintiff could perform light work because the physician "did not take into account the combination of the claimant's back, neck, knee, feet and obesity, which are

4

more likely to limit her standing and walking to no more than two hours." (R. 21). The ALJ did not evaluate any of the other medical opinions in the record.

The ALJ did not find plaintiff fully credible. Id. He found that her failure to seek mental health treatment when recommended and to later discharge herself from treatment in order to pursue a new pain management program demonstrated that her mental health issues were not as severe as alleged. (R. 20). The ALJ also discounted plaintiff's complaints of pain, based on her normal knee x-rays, her exercise regimen, and her ability to stand while at the casino. Id.

Based on those findings, the ALJ found that plaintiff retained the residual functional capacity to perform sedentary work with the following restrictions: push/pull ten pounds occasionally and up to ten pounds frequently; balance frequently; climb, stoop, kneel, crouch, and crawl occasionally; "maintain superficial, work-related interactions with co-workers, supervisors and the public," with no requirement that she "make judgments or perform detailed tasks in interactions;" and conduct "simple routine and some complex tasks but not more detailed tasks." (R. 18).

Plaintiff was unable to perform her past relevant work, which qualified as light and medium exertion. (R. 21). Based on the testimony of a vocational expert, however, plaintiff was able to perform other work, such as a circuit board assembler or food and beverage order clerk. (R. 22). Accordingly, the ALJ found that plaintiff was not disabled. Id.

**The Medical Evidence**

The ALJ's decision fairly summarizes plaintiff's post-application medical records, which show only sporadic, conservative treatment. However, the administrative record also contains a number of medical records that pre-date plaintiff's November 2009 application. The ALJ did not address any of these medical records.

5

Among those records are treatment notes from Dr. Christopher Covington, who treated plaintiff from October 2008 to April 2009, and Dr. Eugene Feild, who treated plaintiff from December 2007 to June 2009. Both Dr. Covington and Dr. Feild treated plaintiff for on-the-job injuries she sustained in August 2007 when she fell down a flight of granite stairs. (R. 216). The fall caused injuries to plaintiff's neck, back, and left elbow. Id. MRI scans showed "disk protrusions of both C5-6 and C6-7 with osteophyte and disk complexes." EMG tests "confirmed C7 and perhaps T1 or C8 radiculopathy." (R. 256).

Dr. Feild, an orthopedic surgeon, performed a discectomy and fusion of plaintiff's C5-6 and C6-7 in April 2008. (R. 254-55). Plaintiff was in recovery through August 2008, when Dr. Feild released plaintiff to work with a permanent restriction on "prolonged overhead activities." (R. 247-48). In October 2008, plaintiff returned to Dr. Feild, complaining of back pain in her sacroiliac area. (R. 243). Dr. Feild gave plaintiff an injection and noted that weight loss would be helpful in reducing her back pain. Id.

While seeing Dr. Feild, plaintiff also complained of pain in her left elbow. He conducted an EMG study in December 2007 and found no abnormalities. (R. 239). A second EMG in May 2009 again showed no abnormalities. (R. 237). Dr. Feild noted that plaintiff's nerve was "sensitive but not being damaged." Id. Plaintiff was not able to tolerate the recommended pain medication; therefore, Dr. Feild concluded that plaintiff was at maximum medical improvement in her left elbow. Id.

Plaintiff began seeing Dr. Covington for back pain within days of her October 2008 appointment with Dr. Feild. (R. 216-18, 219). Plaintiff had only occasional pain and muscle spasms in her cervical spine, but she complained that her lumbar pain was severe. (R. 219). Dr. Covington opted not to treat plaintiff's cervical pain. (R. 216-18, 219). Dr. Covington opined

6

that plaintiff had "fairly advanced disk disease at L4-5 with a probable disk herniation in the midline at L4-5" and "a degenerative disk at 5-1 without stenosis." (R. 216-18, 219). Dr. Covington, in consultation with plaintiff, agreed to begin with a conservative course of treatment in the form of steroid injections. (R. 218, 220).

Plaintiff received two lumbar injections. (R. 214). She reported that the first shot relieved her pain for just a few days, and the second shot provided no relief at all. Id. Dr. Covington recommended aqua therapy. Id.

In January 2009, while plaintiff was participating in aqua therapy, Dr. Covington indicated that plaintiff's L4-L5 and L5-S1 discs had ruptured, causing "significant stenosis." (R. 212). Plaintiff's neck pain began increasing in February 2009. (R. 210). However, an MRI conducted in March 2009 showed no herniation in plaintiff's cervical spine. (R. 208).

Plaintiff last saw Dr. Covington in April 2009. At that time, he wrote a letter to the worker's compensation judge handling plaintiff's case. (R. 206-07). Dr. Covington advised that plaintiff's cervical MRI was normal, except for "a slight bulge on the left at C7-T1 that is probably a spur." (R. 206). With respect to plaintiff's lumbar pain, Dr. Covington opined that plaintiff was not a good candidate for surgery, as her pain was not "significant or limiting enough to warrant any type of surgical intervention." Id. Dr. Covington's main concern was a video presented to him after plaintiff's last appointment. Id. That video, dated March 24 and March 25, 2009, showed plaintiff "very active for two days in a row," which constituted "quite a discrepancy from her previous statement to me that she would have several days in a week that she was unable to get out of bed. Id. In the video, plaintiff made multiple trips to a casino, ran errands, walked normally, and drove to Oklahoma City to shop. Id. The video confirmed Dr. Covington's opinion that plaintiff's lumbar issue was "not severe enough to warrant surgical

7

treatment." (R. 207). Notwithstanding the evidence of plaintiff's activity level, Dr. Covington stated that plaintiff would have some permanent restrictions. Id. He opined that, "[o]n a permanent basis I feel that she should not lift over 25 to 30 pounds, should not perform work overhead and should alternate sitting and standing." Id.

## ANALYSIS

Plaintiff raises a number of issues on appeal (dkt. # 16):

(1)  Plaintiff argues that the ALJ ignored the opinions of two of plaintiff's treating physicians, who imposed postural and exertional restrictions on plaintiff's ability to work;

(2)  Plaintiff argues that the ALJ failed to properly analyze a third party function report, relying on speculation and boilerplate language in finding plaintiff's boyfriend not fully credible;

(3)  Plaintiff argues that the ALJ committed a number of errors at step five. These arguments reference the ALJ's residual functional capacity findings and should be considered step four arguments. Plaintiff cites the ALJ's failure to include limits on overhead reaching and the failure to impose a sit/stand option. Plaintiff also argues that the ALJ should have incorporated the mental limitations found at step two into his findings at step four.

(4)  Plaintiff argues that the ALJ did not perform a proper credibility assessment.

Of those issues, only plaintiff's first issue requires remand. Accordingly, the undersigned addresses only that issue in this report and recommendation.[2]

Plaintiff alleges, among other things, that the ALJ ignored the opinions of two of plaintiff's treating physicians, Dr. Feild and Dr. Covington, who imposed postural and exertional restrictions on plaintiff's ability to work. Specifically, Dr. Covington opined that plaintiff "should not perform work overhead and should alternate sitting and standing." (R. 207). Dr. Feild imposed a similar restriction to "avoid prolonged overhead activities." (R. 247).

---

[2] If an objection is filed, and the District Court finds that a remand on this issue is not required, the undersigned recommends that this matter be re-committed for an additional report and recommendation on the remaining issues.

The ALJ did not discuss at all the medical records of Dr. Feild and Dr. Covington, two of plaintiff's treating physicians. This failure constitutes error for two reasons. First, the ALJ is required to consider all of the relevant medical evidence, including evidence that pre-dates the disability period. See Lackey v. Barnhart, 127 Fed.Appx. 455, 458-59 (10th Cir. 2005) (unpublished)[3] (citing Hamlin v. Barnhart, 365 F.3d 1208, 1223 n. 15 (10th Cir. 2004)). Second, the regulations require the ALJ to develop a record of at least twelve months of medical history preceding the application date, and at least some of the records at issue here would be part of that history. See 20 C.F.R. § 416.912(d).

In response, the Commissioner argues that plaintiff waived this issue by failing to address these restrictions during the ALJ hearing. (Dkt. # 21). The Commissioner also argues that the error is harmless because these opinions, even if given controlling weight, do not limit plaintiff's abilities any further than the ALJ's residual functional capacity findings. Id.

On one point, the Commissioner is correct. The Tenth Circuit has held that "when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997). Notwithstanding this principle, the administrative hearing is a nonadversarial process, and the ALJ remains "responsible in every case 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" Id. at 1164 (quoting Henrie v. United States Dep't of Health & Human Svcs., 13 F.3d 359, 360-61 (10th Cir. 1993)). Additionally, the Supreme Court has held that because disability proceedings are nonadversarial,

---

[3] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

9

a claimant is not required to exhaust all issues before seeking judicial review. See Sims v. Apfel, 530 U.S. 103, 107-12 (2000).

In this case, the treating physicians' opinions imposing the referenced permanent restrictions were in the administrative record and known to the ALJ at the time of the hearing. It would have been prudent for counsel to raise the issue at the hearing when the ALJ did not specifically question the vocational expert about the impact of such restrictions. However, both the Tenth Circuit and the Supreme Court place the responsibility on the ALJ to consider and discuss all treating physician's opinions and to establish a claimant's ability to perform other work. See, e.g., Sims, 530 U.S. at 111; Hawkins, 113 F.3d at 1164. For these reasons, the Commissioner's waiver argument is not applicable here.

The Court has also considered the Commissioner's argument that the harmless error analysis should apply. After checking Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles[4] ("SCO") for information about the reaching requirements and availability of sit/stand options for the two jobs cited in the ALJ's decision, the SCO only identifies reaching in any direction, not overhead reaching. See U.S. Department of Labor, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES, Appendix C, 1993 (defining reaching as "[e]xtending hand(s) and arm(s) in any direction"). See also Segovia v. Astrue, 226 Fed.Appx. 801, 804 (10th Cir. 2007) (unpublished) (noting that "[t]he SCO does not separately classify overhead reaching" and permitting the ALJ to rely on the vocational expert to identify jobs that accommodated the plaintiff's restriction of "occasional overhead reaching"). Additionally, although the Court can determine from the sedentary rating that standing would not exceed two hours per day, neither

---

[4] The SCO is a companion publication of the Dictionary of Occupational Titles and is one of the sources that a vocational expert may use to provide testimony regarding a claimant's ability to perform work. See SSR 00-4p.

the Dictionary of Occupational Titles ("DOT") or SCO addresses the option to sit or stand as needed. Therefore, even if the Court presumes that the ALJ would have adopted the treating physician's restrictions, there is no way to determine whether the jobs cited by the ALJ meet those restrictions. The Court has also considered the Commissioner's argument that the definition of sedentary work restricts frequent overhead reaching and allows for intermittent sitting and standing, citing 20 C.F.R. 404, Subpart P, Appendix 2, 201.00(a); 20 C.F.R. § 416.967(a); SSR 83-10. However, these citations are not helpful in isolating overhead reaching or sit/stand options.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Commissioner's decision in this case be **REVERSED AND REMANDED**. On remand, the ALJ should consider and weigh the opinions of Dr. Feild and Dr. Covington and, if necessary, address the implications of those opinions at step five.

## OBJECTION

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by April 28, 2014.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. See also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that

11

the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

      SUBMITTED this 14th day of April, 2014.

                                                        T. Lane Wilson
                                                        United States Magistrate Judge